702 So.2d 1352 (1997)
LEGAL ENVIRONMENTAL ASSISTANCE FOUNDATION, Appellant,
v.
DEPARTMENT OF ENVIRONMENTAL PROTECTION and Pinellas County, Appellees.
No. 97-204.
District Court of Appeal of Florida, First District.
December 18, 1997.
Andrew Jubal Smith of the Legal Environmental Assistance Foundation, Tallahassee, for Appellant.
C. Anthony Cleveland and Segundo J. Fernandez of Oertel, Hoffman, Fernandez & Cole, P.A., Tallahassee, for Appellee Pinellas County.
Cynthia K. Christen, Tallahassee, for Appellee Department of Environmental Protection.
KAHN, Judge.
Appellant, Legal Environmental Assistance Foundation (LEAF), appeals an order entered by the Department of Environmental Protection (DEP) finding that LEAF had no standing to intervene in the underlying administrative proceeding under either the substantial interest test of section 120.57, Florida Statutes (1995), or under the liberalized provisions of section 403.412(5), Florida Statutes. LEAF is a nonprofit corporation organized under the laws of Alabama, has a certificate of authority to conduct business in Florida, and has Floridians among its members. Because DEP correctly construed section 403.412(5), and because LEAF does not contend that it is entitled to participate in these proceedings by virtue of a substantial interest, we affirm the order on appeal.
The statute dispositive of this case provides:
In any administrative, licensing, or other proceedings authorized by law for the protection of the air, water, or other natural resources of the state from pollution, impairment, or destruction, the Department of Legal Affairs, a political subdivision of municipality of the state, or a citizen of the state shall have standing to intervene as a party on the filing of a verified pleading asserting that the activity, conduct, or product to be licensed or permitted has or will have the effect of impairing, polluting, *1353 or otherwise injuring the air, water, or other natural resources of the state. § 403.412(5), Fla. Stat. (1995) (emphasis added).
Relying upon Florida Wildlife Federation v. State Department of Environmental Regulation, 390 So.2d 64 (Fla.1980), LEAF argues that because a domestic nonprofit corporation would have standing in this matter, it also is entitled to standing because it has a valid certificate of authority issued by the Florida Department of State under section 617.1501, Florida Statutes (1995). By virtue of such certificate, and the provisions of section 617.1505(2), Florida Statutes (1995), LEAF argues that it has the same status as any domestic corporation not-for-profit when it comes to intervention rights under section 403.412(5). Section 617.1505(2), Florida Statutes (1995), provides that a foreign corporation with a valid certificate "has the same but no greater rights and has the same but no greater privileges as ... a domestic corporation of like character."
We cannot agree with LEAF's contention. The rights, duties, and privileges of a foreign corporation holding a valid certificate of authority are not always identical to those of a Florida corporation. See National Rifle Ass'n v. Linotype Co., 591 So.2d 1021 (Fla. 3d DCA 1991) (concluding that under section 607.1505, a foreign corporation's certificate of authority does not make the corporation a resident of Florida for forum non conveniens purposes). Moreover, the generalized provisions of chapter 617 do not override the specific constraints of section 403.412(5). See McKendry v. State, 641 So.2d 45, 46 (Fla. 1994)("[A] specific statute covering a particular subject area always controls over a statute covering the same and other subjects in more general terms."). In Florida law, a more specific statute is considered an exception to, or qualification of, the general terms of the more comprehensive statute. See Floyd v. Bentley, 496 So.2d 862, 864 (Fla. 2d DCA 1986).
The Legislature enacted section 403.412 to extend standing to private and corporate citizens of Florida without any showing of special injury as required by the traditional rule of standing. See Florida Wildlife Fed'n v. State Dep't of Environmental Regulation, 390 So.2d at 67-68. LEAF does not argue that it can meet the substantial interest test. This court has no obligation to encourage, or broaden the scope of, specialized administrative litigation in light of clear legislative intent to the contrary.
AFFIRMED.
ERVIN, J., concurs.
BENTON, J., dissents with written opinion.
BENTON, Judge, dissenting.
The verified second amended petition the Legal Environmental Assistance Foundation, Inc. (LEAF) filed below seeking to intervene in proceedings on Pinellas County's application for the issuance of certain underground waste disposal permits would have entitled a domestic corporation to intervene. As a corporation authorized to do business in Florida, LEAF has the same intervention rights that a domestic corporation has.
As a practical matter, today's decision may have minimal effect beyond the present controversy, considering the ease with which citizens of any state can form a Florida corporation. But the statutory scheme is clear and comprehensive. To forestall constitutional problems that might attend treating foreign and domestic corporations disparately, the Legislature has categorically decreed that a foreign corporation holding a valid certificate of authority to conduct business in Florida is, insofar as pertinent here, to have "the same but no greater rights and ... the same but no greater privileges as ... a domestic corporation of like character." § 617.1505(2), Fla. Stat. (1995).
Explicitly among the rights section 617.0302, Florida Statutes (1995), confers on Florida corporations not for profit is the right to "sue and be sued and appear" as if they were natural persons.
Every corporation not for profit organized under this act, unless otherwise provided in its articles of incorporation or bylaws, shall have power to:
....
(2) Sue and be sued and appear and defend in all actions and proceedings in its *1354 corporate name to the same extent as a natural person.
§ 617.0302, Fla. Stat. (1995). A Florida not for profit corporation's right to "appear" includes the rights conferred by section 403.412(5), Florida Statutes (1995).
A Florida corporation not for profit would have been entitled to intervene as a party below, merely by filing a verified pleading alleging that the underground waste disposal for which Pinellas County sought permits from the Department of Environmental Protection would impair or pollute groundwater "or other natural resources of the state." § 403.412(5), Fla. Stat. (1995). Section 403.412(5), Florida Statutes (1995), provides:
(5) In any administrative, licensing, or other proceedings authorized by law for the protection of the air, water, or other natural resources of the state from pollution, impairment, or destruction, the Department of Legal Affairs, a political subdivision or municipality of the state, or a citizen of the state shall have standing to intervene as a party on the filing of a verified pleading asserting that the activity, conduct, or product to be licensed or permitted has or will have the effect of impairing, polluting, or otherwise injuring the air, water, or other natural resources of the state.
Section 403.412(5), Florida Statutes (1995), is the only basis for intervention which LEAF has asserted on appeal. A decision of our supreme court has construed this provision to apply to domestic corporations not for profit.
Section 617.021, Florida Statutes (1979), states that nonprofit corporations have the power to sue and be sued to the same extent as natural persons. Additionally, most courts which have considered the question have concluded that corporations are citizens for the purpose of pursuing rights granted to citizens. See In re Advisory Opinion to Governor, 243 So.2d 573 (Fla.1971) (discussing the holdings from numerous jurisdictions). We agree with the Fourth District Court of Appeal that, by enacting section 403.412, the legislature has declared the protection of the environment to be a collective responsibility and that to treat corporations as citizens is consistent with that declaration.
Florida Wildlife Fed'n v. State Dep't of Environmental Regulation, 390 So.2d 64, 68 (Fla.1980)(footnote omitted). Accord Cape Cave Corp. v. State Dep't of Environmental Regulation, 498 So.2d 1309 (Fla. 1st DCA 1986). LEAF filed a verified petition meeting the statutory requirements, which would clearly have entitled it to intervention if it had been a domestic corporation. The majority does not suggest otherwise.
Instead, invoking the familiar rule of statutory construction that "a specific statute covering a particular subject area always controls over a statute covering the same and other subjects in more general terms," McKendry v. State, 641 So.2d 45, 46 (Fla. 1994), the majority seems to suggest that section 403.412(5), Florida Statutes (1995), deals specifically (unlike section 617.1505(2), Florida Statutes (1995), which deals only generally) with foreign corporations authorized to do business in Florida. The fallacy in this implied argument is apparent: The word "corporation" does not appear in section 403.412(5), Florida Statutes (1995).
At least insofar as pertinent here,[1] the certificate of authority issued to LEAF by the Florida Department of State places it on the same footing as any domestic corporation not for profit, by virtue of section 617.1505(2), Florida Statutes (1995), which provides:
A foreign corporation with a valid certificate of authority has the same but no greater rights and has the same but no greater privileges as, and except as otherwise provided by this act is subject to the same duties, restrictions, penalties, and liabilities now or later imposed on, a domestic corporation of like character.
As a foreign corporation not for profit holding a valid certificate of authority to do business in Florida,[2] LEAF has the same rights as a domestic corporation not for profit to *1355 assert standing under section 403.412(5), Florida Statutes (1995). LEAF's right to intervene follows ineluctably from the decision in Florida Wildlife Federation.
When it enacts a statute, the Legislature is presumed to be aware of existing law. See, e.g., Holmes County Sch. Bd. v. Duffell, 651 So.2d 1176 (Fla.1995). By the time section 617.1505(2), Florida Statutes, was enacted, Ch. 90-179, § 95, Laws of Fla., a domestic corporation's entitlement to participate in administrative proceedings on the authority of section 403.412(5), Florida Statutes, had been established for a decade, under Florida Wildlife Federation. Even if a conflict between sections 403.412(5) and 617.1505(2) could be said to exist, the pertinent rule of statutory construction is that if "two statutes are in conflict, the later promulgated statute should prevail as the last expression of legislative intent." McKendry, 641 So.2d at 46.
The Legislature took the language of section 617.1505, Florida Statutes (1995), which it originally enacted as chapter 90-179, section 96, Laws of Florida, from a provision it had enacted the year before pertaining to corporations for profit. Ch. 89-154, § 140, Laws of Fla. The latter provision, now codified as section 607.1505, came verbatim from section 15.05 of the Model Business Corporation Act (1984), 4 Model Bus. Corp. Act Ann. (3d ed. Supp.1996). Official Comment[3] to section 15.05, at 15-74, states:
Section 15.05(b), by granting to qualified foreign corporations all of the rights and privileges enjoyed by a domestic corporation, avoids discrimination that might otherwise be subject to constitutional challenge.
Along the same lines, the Model Business Corporation Act's historical background section, at 15-75, states further:
The power of the state over foreign corporations qualified to transact business in the state was originally a matter of controversy and the subject of litigation. The principles have now been widely accepted as they are codified in section 15.05 and described in the Official Comment.
Florida has not escaped controversy and litigation of the kind adverted to in the background section.[4]See, e.g., Lewis v. B.T. Inv. Managers, Inc., 447 U.S. 27, 100 S.Ct. 2009, 64 L.Ed.2d 702 (1980)(holding that section 659.141(1), Florida Statutes (1979), violated the Commerce Clause, because it treated foreign banks and bank holding companies differently than domestic banks and bank holding companies). While the Lewis court found it unnecessary to reach equal protection and due process claims the foreign corporation asserted there, the opinion in Citicorp Industrial Credit, Inc. v. Wal-Mart Stores, Inc., 305 Ark. 530, 809 S.W.2d 815 (1991), affords a good example of constitutional problems differential treatment of foreign corporations can give rise to.
The major legal premise that should control today's decision is Florida Wildlife Federation's holding that, along with natural persons, domestic corporations not for profit have standing under section 403.412(5), Florida Statutes (1995). The requirement that corporations organized under the laws of other states be treated like domestic corporations once they obtain Florida certificates of authority does not depend on any particular concept of corporate citizenship or residency. However defined,[5] neither LEAF's corporate *1356 citizenship nor its corporate residency justifies disparate treatment here.
This analysis treads the same logical path the Supreme Court of Arizona traveled in Lawrence's Estate v. Lawrence, 53 Ariz. 1, 85 P.2d 45 (1938). In that case, certain Arizona statutes governing appointment of personal representatives were read not to allow appointment of a foreign corporation. The Lawrence court nevertheless authorized appointment of a foreign corporation authorized to do business in Arizona as the personal representative of an Arizona decedent, reasoning that
a trust company incorporated under the laws of Arizona may be an executor `as if it were a natural person.' A foreign corporation whose articles empower it to act as executor, and which has qualified to act in Arizona, `shall have and enjoy the same rights and privileges' as a domestic corporation `as if it were a natural person.' The statute does not require such foreign corporation to be a resident of Arizona ... [in order to do business there]. A domestic corporation has no other residence than the state where organized, although all or its principal business may be conducted in another jurisdiction. When the statute authorizes a domestic corporation to act as executor, it is implicit, of course, that its residence is in Arizona, and when the statute says a foreign corporation, by complying with certain requirements, shall enjoy the same rights and privileges as a like domestic corporation, it is implicit in the language used that the foreign corporation is only required to conform with the law in order to exercise and enjoy such rights and privileges.
53 Ariz. at 3, 85 P.2d at 47. While Florida law regarding corporate residency may not be completely settled, the Lawrence opinion's reasoning applies with equal force in the present case. There, as here, a foreign corporation's residency and citizenship were deemed immaterial under a statute conferring on foreign corporations qualifying to do business the same rights and privileges domestic corporations enjoyed.
I respectfully dissent.
NOTES
[1] The question before us has nothing to do with "regulat[ing] the organization or internal affairs of a foreign corporation authorized to conduct its affairs in this state." § 617.1505(3), Fla. Stat. (1995).
[2] As a foreign corporation, LEAF cannot lawfully conduct business in Florida at all without a valid certificate of authority issued by the Department of State. § 617.1501(1), Fla. Stat. (1995).
[3] Official commentary of this kind is an appropriate source of guidance in construing section 617.1505, Florida Statutes (1995), to the extent there is any question about the plain meaning of the statutory language. See Winner v. Cataldo, 559 So.2d 696 (Fla. 3d DCA 1990) (looking to the official comments to the Model Business Corporation Act in interpreting a Florida statute derived from the model act).
[4] The majority's contention that National Rifle Ass'n of America v. Linotype Co., 591 So.2d 1021 (Fla. 3d DCA 1991), authorizesin a forum non conveniens contextdifferential treatment of corporations on the basis of their states of incorporation does not take the supreme court's superseding opinion in Kinney System, Inc. v. Continental Insurance Co., 674 So.2d 86 (Fla.1996), into account.
[5] Notably by citation to In re Advisory Opinion to Governor, 243 So.2d 573 (Fla.1971), the Florida Wildlife Federation court recognized that the concept of corporate citizenship has been subject to varying analysis depending on context. The same is true of the concept of corporate residence. See Algernon Blair Contractors v. Hughes Supply, Inc., 684 So.2d 223 (Fla. 5th DCA 1996). Compare Continental Ins. Co. v. Kinney Sys., Inc., 641 So.2d 195 (Fla. 4th DCA 1994)(holding that foreign corporation authorized to do business in Florida is not subject to dismissal on forum non conveniens grounds), quashed, 674 So.2d 86, 93 (Fla.1996)(holding "it ... is immaterial how `corporate residency' is determined" in applying the doctrine of forum non conveniens) with National Rifle Ass'n (holding foreign corporation authorized to do business in Florida can be dismissed on forum non conveniens grounds, where neither corporate headquarters nor principal place of business is in Florida). But the doctrine of forum non conveniens has no application here.